UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBORAH J. BISHOP,

                              Plaintiff,

v.
                                                          1:16-cv-00128
                                                          (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS        PETER M. MARGOLIUS, ESQ.
*Counsel for Plaintiff*
7 Howard Street
Catskill, NY 12414

HON. RICHARD S. HARTUNIAN           HEETANO SHAMSOONDAR, ESQ.
United States Attorney for the               Special Assistant United States Attorney
Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Court House
Albany, New York 12207

OFFICE OF THE GENERAL COUNSEL
Social Security Administration
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

      Plaintiff Deborah Bishop brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). (Dkt. No. 1.) This case has

proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. (Dkt. Nos. 11 and 12.) Oral argument was not heard. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States Magistrate Judge. (Dkt. Nos. 7 and 8.) For the reasons discussed below, the Commissioner's decision is affirmed.

I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on April 3, 1972. (Administrative Transcript at 151.[1]) She is a college graduate with an associate degree in human services from Highlands Community College. (T. at 36, 60.) She reported past work as a cashier, housekeeper, and shipping clerk. (T. at 199.) Plaintiff has not worked since May 18, 2012. (T. at 168.) Plaintiff alleges disability due to depression, anxiety, alcohol abuse, pseudo dementia, and vitamin B and D deficiencies. (T. at 167.)

Plaintiff filed an application for SSI on April 1, 2013. (T. at 151.) The application was denied on August 2, 2013. (T. at 77-86.) On August 26, 2016, non-attorney representative Janice Cammarato was appointed to assist Plaintiff. (T. at 87.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held on September 12, 2014, before ALJ Carl E. Stephan. (T. at 55.) The ALJ sent a medical interrogatory to Daryl DiDio, Ph.D., on September 15, 2014. (T. at 385.) Dr. DiDio returned his response to the interrogatory on September 21, 2014. (T. at 396.) Plaintiff's representative posed a question to Dr. DiDio about his response, and Dr. DiDio responded to the question on October 11, 2014. (T. at 404.)

---

[1] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations to filed documents other than the Administrative Transcript, including the parties' briefs, will use the page numbers assigned by the Court's CM/ECF electronic filing system.

On February 10, 2015, a second hearing was held to receive testimony from vocational expert Connie Louise Standhart. (T. at 33.)

On March 5, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. (T. at 14.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 16, 2015. (T. at 5.) Plaintiff timely commenced this action on February 4, 2016. (Dkt. No. 1.)

## II. APPLICABLE LAW

### A. Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

---

[2] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

3

Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2016). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.* (quoting *Perez,* 77 F.3d at 46).

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by

substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2012); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado,* 805 F. Supp. at 153. A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.     THE ALJ'S DECISION**

The ALJ found that Plaintiff has the following severe impairments: anxiety, depression, and alcohol abuse. (T. at 16.) He found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. at 17.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitation: claimant can perform simple work; understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; frequently interact with coworkers and the public; occasionally interact with supervisors; and occasionally tolerate changes in the routine work setting. (T. at 20.)

The ALJ found that Plaintiff is capable of performing past relevant work as a housekeeping cleaner (DOT Code: 323.687-014). (T. at 26.) He also found, based on the testimony of the vocational expert, that there are other jobs existing in the national economy that Plaintiff is capable of performing such as linen room attendant (DOT Code: 222.387-030), dining room attendant (DOT Code: 311.677-018), and kitchen helper (DOT Code: 318.687-010). (T. at 26-27.) The ALJ found that considering Plaintiff's age, education, work experience, and the RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. at 28.) The ALJ concluded that Plaintiff has not been under a disability within the meaning of the SSA since March 29, 2013, the date the application was filed. *Id*.

**IV.     THE PARTIES' ARGUMENTS**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. (Dkt. No. 11 at 2-3.) Specifically, Plaintiff contends the ALJ did not find limitations in Plaintiff's ability to make judgments on simple work-related decisions even though Licensed

Clinical Social Worker Carrie Multari ("LCSW Multari") found Plaintiff had moderate limitations in this area. *Id.* Plaintiff also argues that the ALJ failed to consider that Plaintiff may require unscheduled breaks and accommodation for completing tasks timely due to panic attacks. *Id.* Defendant contends that the RFC was based largely on the opinion of Dr. DiDio and that the RFC is supported by substantial evidence. (Dkt. No. 12 at 8.)

V.     **DISCUSSION**

       A.     **Residual Functional Capacity**

A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. § 416.946(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. 20 C.F.R. § 416.945(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include the claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R.

§ 416.969a(b). Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id*. § 416.969a(b)-(c).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Once the ALJ has resolved the claimant's complaints of pain, he can then evaluate exertional and non-exertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding the plaintiff's capacities are not sufficient." *Roat*, 717 F. Supp. 2d at 267 (citation omitted). "RFC is then used to determine the particular types of work a claimant may be able to perform." *Whittaker*, 717 F. Supp. 2d at 440.

### B. Opinion Evidence

#### 1. LCSW Multari

Plaintiff contends that even though the ALJ gave LCSW Multari's opinion great weight, the RFC failed to incorporate all of her opinions as to Plaintiff's limitations. (Dkt. No. 11 at 3.) LCSW Multari began treating Plaintiff in or about May of 2013 at PROS Greene where Plaintiff attended group and individual therapy and received psychiatric treatment. (T. at 362.) In a September 30, 2013, treatment note, LCSW Multari indicated Plaintiff had restarted her anti-depressant and reported some improvement in her mood, focus, and anxiety since starting the

8

medication again. (T. at 366.) On November 4, 2013, Plaintiff reported two past suicide attempts to LCSW Multari. (T. at 383.) On May 29, 2014, LCSW Multari observed that Plaintiff's affect was brighter and that staff had reported she was sharing and participating more in her classes. (T. at 378.) On December 18, 2014, Plaintiff reported that her anxiety and depression symptoms has worsened and that she had verbalized suicidal ideation. (T. at 415.) LCSW Multari's treatment note indicated she was emotional when discussing her mood swings and was exploring a possible diagnosis of Mixed Episode, BiPolar I. *Id.* Throughout her treatment notes, LCSW Multari indicated repeated absences by Plaintiff from her treatment programs. (T. at 362-379.)

In a June 26, 2014, medical source statement of ability to do work-related activities, LCSW Multari indicated that Plaintiff had mild difficulties understanding, remembering, and carrying out simple instructions, interacting appropriately with the public, and interacting appropriately with coworkers. (T. at 343-345.) Plaintiff had moderate difficulties in her ability to make judgments on simple work-related decisions, interact appropriately with supervisors, and respond appropriately to work situations and changes in routine work setting. *Id.* LCSW Multari also indicated Plaintiff had marked limitations in understanding, remembering, and carrying out complex instructions, and in her ability to make judgments on complex work-related decisions. *Id.* She opined that Plaintiff has mental confusion and a flattened affect in stressful interpersonal situations and that her panic attacks impede her ability to complete tasks timely. (T. at 344.) LCSW Multari stated that there would be no changes to her answers regarding limitations if Plaintiff was abstinent from alcohol because Plaintiff's symptoms were present when she was and was not using alcohol. (T. at 344.)

9

### 2. Dr. DiDio

On September 15, 2014, the ALJ sent Dr. DiDio a letter requesting that he review Plaintiff's record and complete a medial source statement of ability to do work-related activities. (T. at 385.) Dr. DiDio reviewed Plaintiff's entire record, which included a July 12, 2013, consultative mental examination by David Mahoney, Ph.D., and completed the medical source statement on September 21, 2014. (T. at 396-403.) Dr. DiDio opined that Plaintiff was not limited in her ability to understand, remember, and carry out simple instruction and make judgments on simple work-related matters. (T. at 396.) He also indicated Plaintiff was moderately limited in her ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. *Id.* In identifying factors that led him to this decision, Dr. DiDio noted the relatively few mental health treatment notes in Plaintiff's record. *Id.* He also indicated her ability to complete simple tasks, history of alcohol abuse, and lack of mental health hospitalizations as factors. *Id.*

Dr. DiDio indicated Plaintiff had moderate restrictions interacting appropriately with the public, supervisors, co-workers, and responding appropriately to work situations and changes in routine work setting. (T. at 397.) In formulating this opinion, Dr. DiDio relied upon Dr. Mahoney's opinion from his July 12, 2013, psychiatric evaluation of Plaintiff. *Id.* Further, Dr. Mahoney opined that Plaintiff had "cognitive deficits secondary to emotional problems including short and long-term memory deficits, concentration difficulties, difficulty learning new material, and executive functioning deficits." (T. at 319.) He observed that her attention and concentration were impaired due to psychiatric symptoms. (T. at 320.) Dr. Mahoney also opined that Plaintiff had mild difficulties maintaining attention, concentration, and a regular schedule, moderate difficulties learning new tasks and performing complex tasks, and marked

limitation making appropriate decisions, and dealing with others and stress. (T. at 320.)

Finally, in regards to her ability to complete tasks on time, Dr. DiDio indicated that Plaintiff's long history of alcohol abuse was materially related to her difficulty with attention and concentration. (T. at 397.)

**C. Analysis**

In determining the RFC, the ALJ must make a decision based on all of the relevant evidence, including a claimant's medical record, statements by physicians, and a claimant's description of her limitations. *See* 20 C.F.R. § 416.945(a). Although an ALJ will consider medical opinions on a claimant's function, ultimately the ALJ is tasked with reaching an RFC assessment based on the record as a whole. 20 C.F.R. § 416.927(d)(2); *see also* SSR 96-6p, 1996 WL 374180, at *1-2 (SSA July 2, 1996). Significantly, the ALJ's RFC finding need not track any one medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole) (citing *Richardson*, 402 U.S. at 399) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

Here, Plaintiff argues that the ALJ's RFC determination was not based on substantial evidence because the ALJ did not include limitations in Plaintiff's ability to make judgments on simple work-related decisions. (Dkt. No. 11 at 3.) Plaintiff contends this was error because LCSW Multari opined moderate limitations in Plaintiff's ability in this area. *Id.* After assessing the record as a whole, the ALJ accepted most but not all of LCSW Multari's opinions. (T. at 20-26.) The ALJ afforded LCSW Multari's opinion great weight even though she was not an

acceptable medical source because she had treated Plaintiff since 2013 and her findings were consistent with the medical evidence. (T. at 25.) In one instance, the ALJ even accepted the opinion of LCSW Multari over the opinion of the consultative examiner, Dr. Mahoney. (T. at 24.) Where Dr. Mahoney found marked limitations in Plaintiff's ability to deal with others, deal with stress, and make appropriate decisions, LCSW Multari found only mild or moderate limitations in those areas. *Id.*

Plaintiff's brief fails to address the other medical sources to which the ALJ gave great weight including the opinion of Dr. DiDio. (*See generally* Dkt. No. 11; T. at 25-26.) Dr. DiDio opined in his medical source statement that Plaintiff was not limited in her ability to make judgments on simple work-related decisions. (T. at 396.) In support of his opinion, Dr. DiDio noted that there were relatively few mental health treatment notes, and Plaintiff had no history of psychiatric hospitalizations. *Id.* Dr. DiDio also relied upon Dr. Mahoney's opinion from his consultative examination of Plaintiff. *Id.*

Plaintiff also alleges that the ALJ did not take into consideration or make an accommodation for Plaintiff potentially needing unscheduled breaks as a result of panic attacks. (Dkt. No. 11 at 3.) In her medical source statement, LCSW Multari opined that Plaintiff is "impacted by anxiety symptoms that impede her ability to complete tasks in a timely fashion." (T. at 344.) However, LCSW Multari does not support this opinion with references to medical evidence and the opinion is not support by medical evidence elsewhere in the record. *Id.* Dr. Mahoney addressed Plaintiff's anxiety in his consultative examination. (T. at 318-19.) He stated that Plaintiff reported symptoms of anxiety but when asked further she described symptoms of irritability. *Id.* Although Dr. Mahoney did state that Plaintiff's attention and concentration were impaired, he attributed that generally to psychiatric symptoms and did not specifically state it

12

was due to anxiety or panic attacks. (T. at 320.) He did not make any observations about how these would relate to Plaintiff's ability to work. *Id.*

Notably, the ALJ found that the opinions of LCSW Multari and Dr. DiDio were generally consistent. (T. at 26.) Evidence of this can be found in Dr. DiDio's response to Plaintiff's request for evidence supporting his opinion of moderate limitations for making appropriate decisions, dealing with others, and dealing with stress. (T. at 404.) Dr. DiDio responded that Plaintiff's treating social worker, LCSW Multari, noted only moderate limitations in those areas. *Id.* Accordingly, the Court finds that the ALJ properly evaluated the opinions of LCSW Multari and Dr. DiDio, and that Plaintiff's mental RFC finding was supported by substantial evidence.

Further support in the record can be found in statements regarding Plaintiff's activities of daily living. Plaintiff's May 10, 2013, responses to an activities of daily living form and her testimony at the September 12, 1014, hearing demonstrate the variety of tasks Plaintiff performs. (T. at 59-70, 187-195.) Plaintiff reported that she takes care of her children, gets them ready for school, packs lunches, and drives her son to school every day. (T. at 59 & 188.) She prepares breakfast and dinner daily, grocery shops for three to four hours, and performs household chores such as cooking, dishes, laundry, vacuuming, and sweeping. (T. at 70, 189-91.) Her hobbies include gardening, which she performs weekly. (T. at 191.) Plaintiff indicated she goes outside every day including feeding an outside cat and going to her PROS mental health program six times per week. (T. at 188, 190 and 192.) In his July 7, 2013, consultative examination, Dr. Mahoney noted that Plaintiff could dress, bathe, groom herself, and take care of all of her household activities of daily living. (T. at 320.) He also indicated Plaintiff socialized with family. *Id.*

Finally, Plaintiff's argument that the limitations addressed in her brief were witnessed

13

during her testimony at the two hearings is not supported by the record. Plaintiff states she took long pauses and had difficulty answering basic questions at the first hearing. (Dkt. No. 11 at 3.) There is no indication in the record of Plaintiff taking any breaks or pauses in the proceeding. (T. at 47-76.) She did struggle with remembering some specific information such as how many years she worked at each of her jobs. (T. at 61-63.) However, she was able to answer other questions and provide information about her family, education, household chores, drinking, mental health treatment, and other relevant topics. (T. at 58-73.) Plaintiff also argued that during the supplemental hearing that she had great difficulty composing herself. (Dkt. No. 11 at 3.) The only potential indication of Plaintiff's difficulty answering basic questions in the record are her statements that "this is really hard for me" and "just caused a lot of anxiety to have to come back out her again." (T. at 37.) Everything else in the record of that hearing indicated that Plaintiff was composed enough to answer the questions asked by the ALJ and her attorney. (T. at 35-43.) As such, the Court finds Plaintiff's arguments relating to her demeanor at the two hearings unpersuasive.

VI.   CONCLUSION

In light of the foregoing, the Court finds that the ALJ's decision was based upon correct legal standards and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the SSA 20 C.F.R. §416.920(g).

**WHEREFORE**, it is hereby

**ORDERED** that the Commissioner's decision is affirmed and the complaint (Dkt. No. 1) is **DISMISSED**.

Dated: April 10, 2017
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge